CHUTZ, J. I ¡^Plaintiff-appellant, Dr. Charles Currier, appeals the trial court’s judgment, sustaining a peremptory exception raising the objection of peremption filed by defendants-appellees, Gregory Anding and Continental Casualty Company, and dismissing Dr. Currier’s legal. malpractice against them. We affirm. FACTUAL AND PROCEDURAL BACKGROUND The following facts are undisputed. Dr. Currier resided at 4755 Claycut Road and owned two undeveloped lots adjacent to and contiguous with the property upon which his residence is located. Sometime before July 2011, Dr. Currier received notice from the City of Baton Rouge/Parish of East Baton Rouge (the City) advising him that the City proposed to acquire the two lots to improve its adjacent sewerage facility, Dr. Currier contracted with And-ing, an attorney practicing law with the Kean Miller law firm, for legal representation. According to the letter of engagement, on July 8, 2011, Anding stated that Kean Miller would provide legal services related to the City’s proposed expropriation of Dr. Currier’s property on an hourly basis. Dr. Currier accepted the engagement on July 18,2011. On July 8, 2011, Anding wrote a letter advising the City of his representation of Dr. Currier. Anding expressly stated, “Dr. Currier had plans to construct a home for his son on the area of the proposed taking. The plans' and intent of doing that are so his son could care for him and avoid the necessity of having to place Dr; Currier in a retirement community or nursing home as he continues to age.” On July 18 and August 11, 2011, Dr. Currier and Anding met with City representatives to discuss Dr. Currier’s concerns about the aesthetics of the project and how the City’s upgrade of its pump station at the sewerage facility near his house would impact his property value., |aTwo appraisals were undertaken by the City. On December 27,' 2011, in' a letter addressed solely to Dr. Currier, the City determined that the just compensation-of Dr. Currier’s property, including compen-sable damage, was $80,312.00, and made “a firm offer” of that amount to Dr. Currier for the voluntary sale of his two lots. On December 30, 2011, the City’s attorney emailed Anding asking if he could return a telephone call from Anding’s client, Dr. Currier. Anding responded in the affirmative. On January 25,2012, Dr. Currier accepted the City’s offer of $80,312.00 for the sale of his two lots. An act of sale was executed by Dr. Currier on February 17, 2012. Dr. Currier filed a petition for damages on December 8, 2014, naming Anding and his liability insurer as defendants.[1] According to Dr. Currier’s allegations, in September of 2014, he “discovered that the advice rendered by ... Anding was negligent and deficient.” The petition averred that And-ing failed to fully inform Dr. Currier of his right to recover compensation to the full extent of his loss and, in particular, to severance damages to the remainder of his property. Dr. Currier alleged that had he been fully and appropriately advised by Anding, he would not have voluntarily sold the lots and sought damages as a result. Defendants subsequently filed a peremptory exception asserting that Dr. Currier’s petition was untimely and perempt-ed. A hearing was held on September 28, 2016. During examination of Dr. Currier by his attorney, the trial judge inquired how much testimony he had left to present. Dr. Currier’s attorney replied, “Ten minutes,” and the trial judge stated, “You can have ten more minutes.” Later, the trial judge apparently determined that Dr. Currier’s examination was not | ¿relevant to the issue of the timeliness of his lawsuit, indicating that counsel would be allowed to brief the timeliness issue and expressly stating, “You may extrapolate some of the testimony that’s been adduced today but not the testimony that is woefully outside the ambit” of the timeliness issue. The trial court subsequently signed a judgment on October 18,2016, sustaining defendants’ peremptory exception and dismissing Dr. Currier’s claims. Dr. Currier’s motion for new trial or, alternatively, motion for reconsideration, was denied. Dr. Currier appeals. PEREMPTION Peremption is raised by a peremptory exception. See La. C.C.P. art. 927. Ordinarily, the exceptor bears the burden of proof at the trial of the peremptory exception. Peremption has been likened to prescription; namely, it is prescription that is not subject to interruption or suspension. Straub v. Richardson, 2011-1689 (La. App. 1st Cir. 5/2/12), 92 So.3d 548, 552, writ denied, 2012-1212 (La. 9/21/12), 98 So.3d 341. As such, the following rules apply to peremption. If peremption is evident on the face of the pleadings, the burden shifts to the plaintiff to show the action is not perempted. If evidence is introduced at the hearing on the exception of peremption, the trial court’s findings of fact are reviewed under the manifest error-clearly wrong standard of review. If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. See Straub, 92 So.3d at 552-53. La. R.S. 9:5605 governs the time in which a claimant has to file a legal malpractice action, providing in relevant part: A. No action for damages against any attorney at law duly admitted to practice in this state ... shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date | Bof the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect. B.... The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended. A straightforward reading of the statute clearly shows that it sets forth two peremptive limits within which to bring a legal malpractice action, namely one year from the date of the alleged act or one year from the date of discovery with a three-year limitation from the date of the alleged act, omission, or neglect to bring such claims. La. R.S. 9:5605; Teague v. St. Paul Fire and Marine Ins. Co., 2007-1384 (La. 2/1/08), 974 So.2d 1266, 1274. The discovery rule, which our jurisprudence delineates as the fourth category of contra non valentem, is an equitable pronouncement which provides that statutes of limitation do not begin to run against a person whose cause of action is not reasonably known or discoverable by him, even though his ignorance is not induced by the defendant. Id. Given the resemblance between the statutory discovery rule and our jurisprudential one, it logically follows that we interpret the statutory rule in accordance with the jurisprudential' one, but within the statutory limitations. Thus, under the provisions of La. R.S. 9:5605, an action is not perempted if it is brought within one year of the date of discovery and the record shows that the claimant was reasonably unaware of malpractice prior to the date of discovery and his delay in filing suit was not due to his willful, negligent, or unreasonable action. Id., 974 So.2d at 1274-75. The “date of discovery” from which peremption begins to run is the date on which a reasonable man in the position of the plaintiff has, or should have, either actual or constructive knowledge of the damage, the delict, and the relationship | ^between them sufficient to indicate to a reasonable person he is the victim of a tort and to state a cause of action against the defendant. Put more simply, the date of discovery is the date the negligence was discovered or should have been discovered by a reasonable person in the plaintiffs position. Id., 974 So.2d at 1275. Dr. Currier contends that Anding committed malpractice by failing to fulfill his duty to speak, i.e., failing to inform Dr. Currier that he was entitled to claim severance damages from the City. With that claimed as the act of malpractice, Dr. Currier asserts the trial court erred in its implicit conclusion that at the time of the sale Dr. Currier had actual or constructive knowledge of the relationship between the damage he suffered and Anding’s malpractice sufficient to indicate that he was the victim of a tort. Specifically, Dr. Currier maintains that the record is devoid of any evidence establishing that he was able to connect his decision to voluntarily sell his property to the City without having received compensation for severance damages (the adverse outcome) with Anding’s failure to advise him he was entitled to claim severance damages (the alleged malpractice) until September 2014 when he learned of,his entitlement to claim severance damages. Thus, Dr. Currier reasons that since he filed, his petition for, damages on December 8, 2014, his legal malpractice action, filed within one year of September 2014, when he had actual knowledge of entitlement to severance damages, is timely- In oral reasons, the trial judge stated, “The Court finds that Dr. Currier possessed sufficient information to begin the running [of the period set forth in La. R.S. 9:5605] at the time of the sale.[2] Therefore, the Exception is granted.” The record contains no direct evidence from which to conclude that Dr. Currier had factual knowledge that Anding had not advised him of the right to pursue severance damages from the City before Dr. Currier voluntarily sold the two lots to the City. Therefore, we focus our review on the date a reasonable person in Dr. Currier’s posir tion should have discovered that he had a claim for severance damages against the City, ie., his constructive knowledge, and whether the trial court correctly concluded it was at the time of the sale. Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. Such notice is tanta-' mount to knowledge or notice of everything to which a reasonable inquiry may lead. Such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient to start running of peremption. Teague, 974 So.2d at 1275 (quoting Campo v. Correa, 2001-2707 (La. 6/21/02), 828 So.2d 502, 510-11, in the analogous context of medical malpractice), . A plaintiffs mere apprehension that something may be wrong is insufficient to commence the running of peremption unless the plaintiff knew or should have known through the exercise of reasonable diligence that his problem may have been caused by acts of malpractice, Teague, 974 So.2d at 1276. Since the standard imposed is that of a reasonable person, any plaintiff who had knowledge of facts that would place a reasonable person on notice that malpractice may have been committed shall be held to have been subject to the commencement of peremption by virtue of such knowledge even though he asserts a limited ability to comprehend and evaluate the facts. The focus is on the appropriateness of the plaintiffs actions or inactions, and therefore, the inquiry is when would a reasonable person have been on notice that malpractice may have been committed. See Straub, 92 So.3d at 553. At the hearing, Anding testified that his initial consultation with Dr. Currier took place at Dr. Currier’s house where Anding took pictures. When Dr. Currier |stold Anding that he had recently divorced and was trying to get back on his feet, Anding indicated that he would try to keep costs of legal representation down and, therefore, did not charge Dr. Currier for the consultation. According to Anding, he explained to Dr. Currier that challenging the City’s right to take the property was expensive with a low probability of success. Since the City had not yet appraised the property, Anding advised Dr. Currier to wait on two appraisals and an offer.[3] Anding recalled having subsequently-represented Dr. Currier when he accompanied Dr. Currier to meetings with City representatives on July 18,and August 11, 2011. At the meetings, discussions focused on the aesthetics of the City’s project and its impact on Dr. Currier’s residence as well ás whether Dr. Currier could still build a home for his son. Anding testified that he and Dr. Currier had agreed that once Dr. Currier received appraisals and/or an offer from the City, Dr. Currier was to send the information to Anding, who would then contact an appraiser. On December 30, 2011, responding to an email inquiry from the City’s attorney, Leo D’Aubin, Anding stated that “yes” D’Aubin could return a telephone call from' Dr. Currier. Anding said, since Dr. Currier had not sent Anding any appraisals conducted by the City or notices of an offer, he agreed to allow D’Aubin to talk to his client without him present. because the only pending matters were the aesthetic concerns that Dr. Currier had raised. And-ing thought Dr. Currier’s direct discussions with the City about the aesthetic aspects of the project would help keep costs down. Anding testified that his next communication with Dr. Currier occurred on January 5, 2012, when Anding’s secretary de-, livered a telephone message from Dr. Currier, asking for the name of an appraiser. Anding stated that he was surprised | aby the message and its implication suggesting that the City had obtained appraisals or made an offer to Dr. Currier. Anding directed his secretary to return Dr. Currier’s call, give him the telephone numbers of two appraisers who could conduct an appraisal on Dr. Currier’s behalf, advise him that the appraisal would not be free of charge, and request that Dr.' Currier send Anding the appraisal reports he had received from the City. Thereafter, Anding stated that he contacted an appraiser and spoke with him by telephone on January 10th and 13th. After sending an invoice, dated February 7, 2012, to Dr. Currier for charges related to the two telephone discussions, Anding recalled having received a contentious telephone call from Dr. Currier on February 9th, asking-Anding why he had billed Dr. Currier when Dr. Currier had already settled the matter with the City. According to Anding, this was the first time he was aware that the City had made an offer to Dr. Currier or that Dr. Currier had entered into a settlement with the City for the sale of the two lots. , Anding explained that his response to Dr. Currier’s February 9th telephone call was to send a letter advising Dr. Curriér that since he had settled the expropriation claims against him with the City, “this brings our engagement to a conclusion.” Because Dr. Currier believed the charges for the two calls were inappropriate, And-ing ultimately wrote them off as losses. At the conclusion of his direct examination, Anding staled that he never had any communications with Dr. Currier about the City’s offer prior to learning of the settlement on February 9th, had no input into Dr. Currier’s decision to sell the property to the City,' and certainly never advised Dr. Currier whether or not he should sell his property in light of the City’s offer. Anding reiterated' that the only advice he ever gave to Dr) Currier was the' same advice he provided on the first day of his representation, which was that they should respond to thé City’s appraisals with an appraisal conducted' on behalf of Dr. Currier and “go from there.” Anding hoemphasized that Dr. Currier never asked him for his opinion on whether he should accept the City’s offer. He advised the trial judge that had he settled the matter on behalf of Dr. Currier, his bill would have been significantly higher than the amount Dr. Currier paid for Anding’s representation. Dr. Currier’s testimony was starkly different from Anding’s in several respects. After explaining that he had formerly practiced as a dentist and had spent eight years on the Baton Rouge City Council, Dr. Currier denied that he was worried about the costs of pursing the matter, stating that he was willing to spend whatever it took to have his son’s residence next door to him. Dr. Currier also was adamant that Anding knew that the City had made an offer to him and that Dr. Currier was considering it, stating that he notified And-ing by telephone between December 27, 2011, when the City made an offer, and January 19, 2012, when Dr. Currier initially rejected the City’s offer. He testified that Anding’s testimony to the contrary was “an untruth.” According to Dr. Currier’s recollection, Anding knew Dr. Currier did not want to sell the two lots, but after he advised Anding of the amount of the City’s offer and asked what he should do next, Anding provided Dr. Currier with “no feedback.” Dr. Currier believed that Anding should have advised him that had they challenged the City’s expropriation and lost, Dr. Currier would have still had legal recourse at the end of the whole process to seek severance damages. Dr. Currier stated that beyond Anding’s presence at the meetings on July 18th and August 11th, Dr. Currier received nothing of value for Anding’s representation. Dr. Currier criticized Anding’s representation at the meetings, suggesting Anding “should have stepped up on my side.” According to Dr. Currier, Anding never checked up on things, telephoned him,, or inquired as to why the City had not sent Anding the appraisals. From Dr. Currier’s perspective, Anding put him on the In “back burner” in favor of “bigger fish,” and simply did not spend ■ enough time on his claim. Dr. Currier admitted that Anding was not involved in Dr. Currier’s negotiations with the City, He also acknowledged that Anding had informed the City of Dr. Currier’s plans to build a house for his son, noting that Anding had even carried the plans to the July 18th and August 11th meetings. By reaching the conclusion that Dr. Currier possessed sufficient information to commence the one-year peremptive period at the time of the sale, the trial court chose to credit Anding’s version of the facts over Dr. Currier’s. Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. If the trial court’s factual findings are reasonable in light of the record reviewed in its entirety, this court may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Stobart v. State through Dep’t of Tramp. & Dev., 617 So.2d 880, 882-83 (La. 1993). We cannot say documents or objective evidence so contradict Anding’s story, or that his story is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit it. See Stobart, 617 So.2d at 882. Thus, the trial court was not manifestly erroneous or clearly wrong in crediting it. . Anding’s version was that he advised Dr. Currier to send him the City’s appraisals and/or offer but that his client did not do so, and thus, Dr. Currier knew that he had failed to comply with his attorney’s instructions. Additionally, Dr. Currier acknowledged that Anding had provided him no advice during the negotiations with the City that culminated in the settlement by which Dr. Currier agreed to voluntarily sell the two lots. Given his complaints about his attorney, the record supports an implicit factual finding that Dr. Currier was dissatisfied with Anding’s representation prior to January 25, 2012, the date that he agreed to accept 1 1sthe City’s offer. Dr. Currier’s dissatisfaction continued through February 17, 2012 when Dr. Currier executed the act of sale. In light of the testimonial and documentary evidence, the trial court’s implicit finding that Dr. Currier removed Anding from the negotiation, settlement, and sale process is not manifestly erroneous. We conclude that a reasonable person, who is dissatisfied with his attorney’s performance to the point where he does not comply with his attorney’s instructions, does not inform him of an offer to settle, and negotiates a settlement in the disputed matter for which the attorney was hired to l’epresent him without any input whatsoever from the attorney, would clearly be on notice at the time he signed the act of sale that his attorney may have not fully apprised the client of all available options. In other words, Dr. Currier could not have reasonably expected that Anding had provided him with all the information on available options since Dr. Currier failed to fully apprise Anding of all the developments that had occurred involving the City’s proposed taking of his property. Removing Anding from the negotiation, settlement, and sale process as Dr. Currier did should have excited Dr. Currier’s attention and put him on guard to call for an inquiry as to whether he had been fully apprised of all his legal options by no later than February 17, 2012 when he executed the act of sale without Anding’s input. Accordingly, the trial court correctly concluded that Dr. Currier had sufficient information to commence the accrual of the one-year peremptive period of La. R.S. 9:5605 at the time of the February 17,2012 sale. EXCLUSION OF EVIDENCE/DENIAL OF DUE PROCESS Dr. Currier maintains the trial court erred when it discontinued his testimony during his attorney’s examination of him and did not permit him to finish the presentation of his evidence. Claiming a denial of his due process rights, Dr. Currier requests a reversal of the trial court’s judgment and a remand for a full | ^contradictory hearing. He also asserts that it was error for the trial court to summarily deny his motion for new trial or alternative motion for reconsideration which asserted a denial of due process on the same basis. Pursuant to La. Const. Art. 1, § 22, “[a]ll courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay.” This grant of constitutional authority is tempered by the court’s “power to require that the. proceedings ... be conducted ... in an orderly and expeditious manner ... and to control the proceedings at trial, so that justice is done.” La. C.C.P. art. 1631. The due process clauses of the Louisiana Constitution and the Fourteenth Amendment of the United States Constitution guarantee litigants a right to a fair hearing. Nonetheless, “due process” does not mean litigants are entitled to an unlimited amount of the court’s time. Goodwin v. Goodwin, 618 So.2d 579, 583 (La. App. 2d Cir.), writ denied, 623 So.2d 1340 (La. 1993). A litigant generally should have the right to present all evidence that he possesses with regard to a contested issue at trial if the evidence is relevant, admissible, and not cumulative. This right is limited, however, by La. C.E. art. 403, which allows for the exclusion of relevant evidence when its probative value is substantially outweighed by undue delay and waste of time, and by the power granted to trial judges in Lá. C.C.P. art. 1631 to ensure that, relevant, admissible, noncumulative- evidence is presented in such a way that time will not be unnecessarily wasted. Goodwin, 618 So.2d at 583. The trial court is vested with great discretion in controlling the presentation of evidence under La, C.C.P. art. 1631. Moreover, La. C.E. art. 103A provides that error may not be predicated.upon a ruling admitting or excluding evidence unless a substantial right of the party is affected. Reversal by an appellate court is not warranted unless the challenged ruling was erroneous and the error prejudiced the 114complainant’s cause. Gillio v. Hanover Am. Ins. Co., 2016-0640 (La. App. 1st Cir. 1/31/17), 212 So.3d 588, 595, writ denied. 2017-0393 (La. 4/24/17), 219 So.3d 1098. While a better practice would have been for the trial court to have permitted the parties to fully present their respective cases, or to more clearly articulate imposition of time limitations, we cannot say the trial court abused its great discretion in controlling the presentation of evidence in this case and concluding the testimony when it did. We. note that Dr. Currier was able to fully cross examine Anding. Additionally, although Dr.. Currier’s testimony, was interrupted before his attorney concluded questioning, Dr. Currier was permitted to offer his version of the facts, which were in stark contrast to Anding's. On appeal, Dr. Currier’s primary contentions are directed at his inability to offer additional testimony regarding his lack of knowledge of the right to claim severance damages and Anding’s failure to advise him- of that. But during the attorneys’ examinations of Dr. 'Currier, he clearly stated that he was unaware of his right to claim severance damages at any time between the beginning of'Anding’s representation and the time he executed the act of sale on February 17; 2012, which was the date that the trial' court decided that he should have known of any potential malpractice. Thus, any additional testimony directed at the issue of Dr. Currier’s lack of knowledge on or before' February 17, 2012 would-have'merely been cumulative of that to which' Dr. Currier had already testified. Mindful that the parties presented contrasting versions. of the salient facts in their respective testimonies and that the trial court credited Anding’s over Dr. Currier’s, we conclude that any error by the exclusion of the presentation, of additional evidence was not prejudicial, to Dr. Currier’s cause so as to warrant a |1Breversal.[4] As such, the trial court also did not err in summarily denying Dr. Currier’s motion for new trial or alternative motion for reconsideration. See La. C.C.P. arts. 1972 (setting forth peremptory grounds mandating a new trial) & 1973 (establishing discretionary grounds for a new trial); see also Lalonde v. Vallot, 2014-0167 (La. App. 1st Cir. 12/10/14), 168 So.3d 457, 463 (movant’s motion did'not meet any of the criteria that would have mhde the granting of a new trial peremptory under La, C.C.P. art. 1972, and the trial court was within its discretion in denying the new trial under La. C.C.P. art. 1973). DECREE For these reasons, the trial court’s judgment, sustaining the peremptory exception raising the objection of peremption, is affirmed. Appeal costs are assessed against plaintiff-appellant, Dr. Charles Currier. AFFIRMED. McDonald, J. agrees and assigns additional reasons. McDONALD, j., agrees and assigns additional reasons. |! First, I agree that that the trial court did not manifestly err in finding that Dr. Currier himself had sufficient knowledge of his potential legal. malpractice claim against Mr. Anding on February 17, 2012, the date Dr. Currier sold his property to the City. Thus, Dr. Currier’s suit against Mr. Anding, filed on December 8, 2014, was perempted. However, I point out that attorney Paul Dry’s knowledge provides a second basis upon which to find Dr. Currier’s claim perempted. In February 2013, Mr. Dry told Mr. D’Aubin that his client, Dr. Currier, would pursue a damages claim against the City. In April 2013, Mr. Dry specifically asked Mr. D’Aubin about severance damages. Thus, no later than April 2013, Mr. Dry knew of any potential legal malpractice claim against Mr. Anding. An attorney’s knowledge, actual or otherwise, is imputed to his client. Slaughter v. Bd. of Sup’rs of S. Univ. & Agr. & Mech. Coll. 10-1114 (La. App. 1 Cir. 8/2/11), 76 So.3d 465, 476, unit denied, 11-2112 (La. 1/13/12), 77 So.3d 970; Stevison v. Charles St. Dizier, Ltd., 08-887 (La. App. 3 Cir. 3/25/09), 9 So.3d 978, 981, unit denied, 09-1147 (La. 10/2/09), 18 So.3d 116. Thus, even if the trial court had not determined that per-emption began to run on February 17, 2012, based on Dr. Currier’s knowledge, then peremption would have begun to run no- later' than April 2013, based on Mr. Dry’s knowledge. In either event, Dr. Currier’s action against Mr. Anding, filed in December 2014, was toó late. . Although he misidentified the insurer’s name in his original petition, in a later amendment, Dr. Currier correctly identified Anding’s liability insurer as Continental Casualty Company. In the supplemental pleading, Dr. Currier also added as additional defendants the City and attorney Paul Ray Dry, who represented Dr. Currier subsequent to Anding's representation and prior to the filing of this lawsuit. Dr. Currier’s claims against the additional defendants are not at issue in this appeal. . Although the trial court referred to the time period set forth in La. R.S. 9:5605 as ‘'prescription,” the Louisiana Supreme Court has pronounced that the two time periods in that statute are peremptive. See Teague, 974 So.2d at 1274; accord Jenkins v. Starns, 2011-1170 (La. 1/24/12), 85 So.3d 612, 624; Naghi v. Brener, 2008-2527 (La. 6/26/09), 17 So.3d 919, 922-23. , Testimonial evidence established that when Dr, Currier contracted with Anding, the City's practice was to obtain two appraisals and offer the owner the one with the highest valu-atión. . Dr. Currier asserts that he intended to call Paul Ray Dry, see n.l, supra, as a witness who would have testified to Dr. Currier’s lack of knowledge, understanding, and comprehension that legal malpractice had occurred. In light of our conclusion that the trial court was not manifestly erroneous in finding that the date Dr. .Currier should have known of any potential legal malpractice claims against Anding was February 17, 2012, and. the evidence which establishes Dry was not involved with Dr. Currier prior to 2013, there was no prejudicial error in the exclusion' of Dry’s testimony. See La. C.E. arts, 103 & 403; see also La. C.*C,P, art. 1631.