STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2022 CA 0292

VIRGINIA ANN GERACE BENOIST

VERSUS

JACKSON NATIONAL LIFE INSURANCE COMPANY, NORMA
FORD GERACE, AND MARY KATHRYN GERACE CARLETON

*DATE OF JUDGMENT:*   NOV 1 5 2022

ON APPEAL FROM THE NINETEENTH JUDICIAL DISTRICT COURT
PARISH OF EAST BATON ROUGE, STATE OF LOUISIANA
NUMBER 710447, SECTION 27

HONORABLE TRUDY M. WHITE, JUDGE

* * * * * *

Jerry F. Pepper
Baton Rouge, Louisiana

Counsel for Plaintiff-Appellant
Virginia Anne Gerace Benoist

Michelle Lorio St. Martin
David Gregory Koch
Riley E. Huntington
Baton Rouge, Louisiana

Counsel for Defendant-Appellee
Norma Ford Gerace

Dawn D. Bonnecaze
F. Charles Marionneaux
Melissa Jade Avant
Thomas C. Naquin
Baton Rouge, Louisiana

Counsel for Defendant-Appellee
Mary Katheryn Gerace Carleton

* * * * * *

BEFORE: THERIOT, CHUTZ, AND WOLFE, JJ.

Disposition: **AFFIRMED.**

**CHUTZ, J.**

Plaintiff-appellant, Virginia "Ginny" Anne Gerace Benoist, appeals the trial court's judgment, granting a motion to dismiss her action to review the acts of a mandatary (action to review) serving under a power of attorney executed by principal, defendant-appellee, Norma F. Gerace. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Ginny instituted this action to review on August 9, 2021, naming her sister, Mary Kathryn "Mary Kay" Gerace Carlton, and her 91-year-old mother, Mrs. Gerace, as defendants.[1] According to the allegations of Ginny's petition, in 2019, Ginny's daughter, Mary Turner (Mrs. Gerace's granddaughter), was named as Mrs. Gerace's sole mandatary pursuant to a duly recorded power of attorney executed in conjunction with an extensive estate plan set up for Mrs. Gerace. In February 10, 2020, Mrs. Gerace executed a new power of attorney that revoked Mary Turner's authority and named Mary Kay as Mrs. Gerace's sole mandatary. Another power of attorney was executed by Mrs. Gerace on May 5, 2021 that revoked the February 2020 power of attorney in favor of Mary Kay and returned mandatary authority to Mary Turner and also to Paul Benoist, Ginny's husband (Mary Turner's father). On June 29, 2021, Mrs. Gerace revoked the May 5, 2021 power of attorney and executed a new one in favor of Mary Kay. In her August 9, 2021 petition, Ginny claimed that Mary Kay has exercised "undue and oppressive influence" over their mother, using Mrs. Gerace's assets as Mary Kay's own.

---

[1] In addition to the allegations of this action to review, Ginny levied other claims against her sister, including one for the intentional interference with contractual rights. Ginny also named Jackson National Life Insurance (Jackson National) as a defendant. According to Ginny's petition, Jackson National issued an annuity to Mrs. Gerace wherein she and Mary Kay were named as irrevocable beneficiaries such that Ginny was a third-party beneficiary of a stipulation pour autrui, which endowed her with contractual rights and standing to assert a breach of contract, challenging a liquidation of the annuity by Mrs. Gerace in January 2020. Although Ginny avers that Mary Kay "caused" Mrs. Gerace's divestment of the Jackson National annuity and raises many complaints about Mary Kay's conduct in conjunction with the liquidation of the annuity, Ginny clearly alleges that Mary Kay's actions were without proper authority, legal mandate, or direction from Mrs. Gerace and, therefore, are outside the ambit of the action to review claim before us in this appeal.

2

On October 1, 2021, Mrs. Gerace filed a motion to dismiss, seeking dismissal from this litigation initiated by Ginny. After a hearing on October 28, 2021, the trial court granted the motion. A judgment was signed on November 12, 2021, dismissing Mrs. Gerace from the litigation and granting Mrs. Gerace's request for attorney fees. Ginny appeals.

## ACTION TO REVIEW THE ACTS OF A MANDATARY

If a mandatary breaches his or her fiduciary obligations, Louisiana contemplates two methods by which recourse may be sought: the direct action and the action to review. Elizabeth R. Carter, *Fiduciary Litigation in Louisiana: Mandataries, Succession Representatives, and Trustees*, 80 La. L. Rev. 661, 677 (2020). The direct action refers to the traditional remedies available for mandatary malfeasance. The action to review, however, grants various interested parties other than the principal the right to bring an action during the life of the principal to review the mandatary's actions. *Id.* See also La. R.S. 9:3851-3856.

The chapter setting forth the provisions of an action to review was added by Louisiana Acts 2014, No. 356, § 1, under the title "Powers of Attorney for the Elderly – Action to Review the Acts of a Mandatary." It is an attempt by Louisiana, like many other states, to protect the vulnerable elderly population from abuse, particularly financial abuse, arising from fiduciary misconduct. See *Fiduciary Litigation in Louisiana: Mandataries, Succession Representatives, and Trustees*, 80 La. L. Rev at 664.

Enactment of the action to review helps address a recurring practical problem: the gap between mandate and interdiction. A principal with a significantly diminished mental or physical condition may not be able to terminate the mandate and seek recourse against his mandatary through the direct action. The same is true if the mandatary is abusing the principal. The action to review brings

3

the contract of mandate closer to interdiction in some circumstances. It allows a party other than the mandatary to bring an action "on behalf of the principal to review the acts of the principal's mandatary" and to seek relief on the principal's behalf. *Fiduciary Litigation in Louisiana: Mandataries, Succession Representatives, and Trustees*, 80 La. L. Rev at 680-81. See La. R.S. 9:3851 (setting forth a list of persons who may petition a court on behalf of the principal to review the acts of the principal's mandatary and grant relief as authorized in La. R.S. 9:3851-3856).

**Motion to Dismiss:**

The action to review includes a procedural mechanism allowing the principal to dismiss a plaintiff's action. La. R.S. 9:3852 provides:

> A. If the principal files a motion to dismiss the action, the principal shall testify in person at the hearing on the motion or, with the agreement of the parties or for good cause shown, by visual remote technology or by deposition.
>
> B. The court shall grant the principal's motion to dismiss the action if it finds that the principal is able to comprehend generally the nature and consequences of the acts of the mandatary and that the mandatary's authority to act is not the result of fraud, duress, or undue influence.

Thus, the principal may oppose the action to review. But in so doing, the principal is subjected to potentially invasive and embarrassing court scrutiny whereby the court is required to hold a hearing to determine whether the principal is aware of the acts of the mandatary and not subject to fraud, duress, or undue influence, is able to comprehend generally the nature and consequences of the acts of the mandatary, and appears able to make reasoned decisions. See *Fiduciary Litigation in Louisiana: Mandataries, Succession Representatives, and Trustees*, 80 La. L. Rev at 693. These factual inquiries, as all factual findings, are governed by the manifest error/clearly wrong standard of review. See *Stobart v. State, Dep't of Transp. and Dev.*, 617 So.2d 880, 882 (La. 1993). See also *King v. Town of*

*Clarks*, 2021-01897 (La. 2/22/22), 345 So.3d 422, 423 (per curiam) (determination of knowledge is an issue of fact); *Minton v. Acosta*, 2021-1180 (La. App. 1st Cir. 6/3/22), 343 So.3d 721, 731 (determination of the existence or absence of fraud is a question of fact).

It is well settled that an appellate court cannot set aside a trial court's factual findings in the absence of manifest error or unless the findings are clearly wrong. *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989). If the trial court's findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse those findings even though convinced it would have weighed the evidence differently had it been the trier of fact. *Rosell*, 549 So.2d at 844. In order to reverse a fact finder's determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record clearly establishes that the fact finder is manifestly erroneous or clearly wrong. *Stobart*, 617 So.2d at 882.

In the matter before us, the hearing was held by visual remote technology. In response to her attorney's questioning and cross examination by Ginny's attorney, Mrs. Gerace testified as follows. She is a widow who has lived in Baton Rouge most of her life. Although she initially worked as a medical laboratory technologist when she graduated from college, after she married and moved to Baton Rouge with her husband, she attended LSU and obtained a teaching certification, followed later with a master's degree in biology. She retired after having taught many years at the high school level.

Mrs. Gerace explained to the court that she lived alone in an apartment in a retirement and assisted living complex. She had no caretakers or sitters and was not in the facility's assisted care program because she was able to tend to all of her personal needs. Mrs. Gerace regularly drove herself to the bank, beauty salon,

5

Mary Kay's home and office, and the library where she attended meetings of The Daughters of the American Revolution.

Insofar as this lawsuit brought by Ginny, Mrs. Gerace understood that she was a defendant and that Ginny was claiming Mary Kay should not hold Mrs. Gerace's power of attorney. A power of attorney, according to Mrs. Gerace, allowed someone to make decisions and to provide advice and assistance. She noted that at the time of the hearing, she had appointed Mary Kay to hold the power of attorney. Mrs. Gerace was cognizant that in June 2021 she had gone to an attorney's office to execute the power of attorney. Mary Kay did not pressure her in any way to be named as mandatary. Mrs. Gerace clearly understood that, as a result of the power of attorney, Mary Kay could make medical and financial decisions on Mrs. Gerace's behalf. If she were unable to handle her affairs, Mrs. Gerace stated, "I would want Mary Kay, my daughter" to do so for her.

Mrs. Gerace testified in detail why she had chosen Mary Kay to hold the power of attorney, emphasizing the close proximity between Mary Kay's and her residence with Mary Kay living less than a five-minute drive away. Mrs. Gerace said that she saw Mary Kay "all the time," and on days that she did not, they spoke on the telephone. Mrs. Gerace explained that Ginny was frequently in Natchez, Mississippi, where Paul resided in an inherited home "[that is] in the National Registry," although Mrs. Gerace recognized that Ginny also had the Gerace family home in Baton Rouge, a portion of which served as a law office. Mrs. Gerace articulated the bases for having executed powers of attorney in the past to Paul and Mary Turner. Paul's inquiry into the status of her banking account led to a power of attorney in his favor so he could access Mrs. Gerace's bank statements. Mary Turner had been in close proximity while she attended Tulane University Law

6

School, and Mrs. Gerace wanted to provide her granddaughter with some experience in finances. But Mary Turner had moved to Birmingham, Alabama.

Pointing out that Mary Kay is a CPA and investment broker, Mrs. Gerace explained that Mary Kay handled Mrs. Gerace's tax returns and investments. Mary Kay listened to Mrs. Gerace's instructions in investment decision-making, including following her directives in those instances that Mrs. Gerace declined to invest. Mrs. Gerace has never had any difficulty accessing tax or investment information from Mary Kay. Mrs. Gerace was aware that some of her financial records were kept in a safe at Mary Kay's office, approved of their storage at that location, and was able to access them when she wanted by driving to the office.

Mrs. Gerace was asked about specific complaints set forth in Ginny's petition. Ginny averred that upon review of her mother's 2020 federal income tax return, a change of address was noted. But Mrs. Gerace testified that she was aware Mary Kay's home address was on file for tax purposes and indicated that it was a "good" decision because she did not have to deliver the paperwork to Mary Kay. Insofar as Ginny's allegation that when Mrs. Gerace lived with Mary Kay in 2019, in an effort to prevent Mrs. Gerace from retrieving her mail, Mary Kay installed a lock on the home mailbox, Mrs. Gerace said that Mary Kay never prevented her from retrieving her mail. According to Mrs. Gerace, she had banked at Neighbors Federal Credit Union (NFCU) ever since she started teaching school when the bank had a different name, and she received her own bank statements. Regarding Ginny's claim that Mrs. Gerace's bank account was closed and then reopened, Mrs. Gerace described an institutional change due to the age of her account initiated by the bank and how she tended to the modification after the bank notified her. Mary Kay had no involvement with the changes.

Ginny's allegation that Mrs. Gerace has been isolated, cut off, and deprived of visits with Ginny and Mary Turner are without foundation according to Mrs. Gerace. Mrs. Gerace stated that due to Covid, she was not traveling but that nothing prevented Ginny and Mary Turner from visiting her in Baton Rouge if they wanted. Mary Kay had not prevented Ginny and Mary Turner from seeing Mrs. Gerace and had not counseled Mrs. Gerace not to visit with them.

At the conclusion of her direct examination, Mrs. Gerace advised the court that she had been "really hurt" upon reading the allegations of Ginny's lawsuit, the things that Ginny said about Mary Kay were not true, she was testifying because she wanted to make her own decisions, and she wanted Mary Kay to continue holding the power of attorney that allowed Mary Kay to make financial and medical decisions. In her cross examination, Mrs. Gerace denied having complained to Ginny that her financial affairs were not in order or that she was unable to obtain records or retrieve her mail from Mary Kay. Mrs. Gerace further denied having asked Ginny for assistance with her medical insurance policies or the management of her annuities. She disagreed with the characterization of moneys she had paid to Mary Kay as "rent," explaining that the payments were for a small wing to Mary Kay's house that Mrs. Gerace decided to add.

Because Mrs. Gerace testified that she had read the allegations of Ginny's petition, Mrs. Gerace was clearly familiar with Ginny's claims against Mary Kay. On direct examination, Mrs. Gerace was asked about each instance of alleged abuse by Mary Kay while she was acting under Mrs. Gerace's power of attorney set forth in Ginny's petition. Mrs. Gerace either ratified Mary Kay's decisions or explained why they lacked merit. Mrs. Gerace expressly agreed with the address change for tax returns, denied having been prevented by Mary Kay from accessing her mail, explained Mary Kay's lack of involvement in the changed NFCU bank

8

accounts, and invited Ginny and Mary Turner to visit with her in Baton Rouge while describing the impact of Covid on her decision to restrict her travels. Moreover, Mrs. Gerace indicated that Mary Kay followed her directives when making investment decisions, provided her access to her records which Mary Kay kept secure, clearly understood the effect the power of attorney had on the person upon whom she bestowed it, and wanted Mary Kay to have the authority to make financial and medical decisions on Mrs. Gerace's behalf.

At the conclusion of the hearing, the trial court stated the following:

> All right. The court is ready to rule on what's before the court. Before the court is the question of whether or not [Mrs.] Gerace ... can comprehend generally the nature and consequences of the acts of ... the [mandatary] ... her daughter, Mary Kay ... and that ... the mandatary's authority to act is not a result of fraud, duress, or undue influence.
>
> It ... was amazing to listen to [Mrs.] Gerace's testimony today. The clarity, the detail, the honesty, the vulnerability of her remarks, the warmness, the caring was very, very compelling. [There] is no question in my mind that [Mrs.] Gerace has outstanding cognitive ability at age 91. That said, [Mrs.] Gerace's motion to dismiss [Ginny's] claims ... relative to [Mary Kay's] power of attorney under La. R.S. [9:]3852 ... is granted. ...
>
> And I do want to make a finding that the testimony bore or rose to ... clear and convincing evidence that there was not any undue influence. [Mrs.] Gerace can manage her own affairs, she makes her own appointments, she drives a car at 91, she understands what she has, she understands ... it was clear that she wants her daughter [Mary Kay] to be her agent, and she has every right to do that.

Mrs. Gerace's testimony provides an evidentiary basis for the trial court's factual conclusions that Mrs. Gerace was able to comprehend generally the nature and consequences of Mary Kay's acts as her mandatary and that Mary Kay's authority to act was not the result of fraud, duress, or undue influence. As such, we cannot say the trial court's factual findings were either manifestly erroneous or clearly wrong. Thus, under the plain language of La. R.S. 9:3852(B), the trial court was required to grant the motion to dismiss.

9

On appeal, Ginny relies on La. R.S. 9:3854(C), which sets forth that in addition to the required consideration of the mandate, the court shall consider an illustrative list of relevant factors in reaching its decision of whether a plaintiff asserting an action to review is entitled to any of the relief available under La. R.S. 9:3851-3856. Ginny maintains that the trial court erred when it disallowed presentation of evidence from her witnesses to rebut Mrs. Gerace's testimony, suggesting she was deprived of her substantive right to carry her burden of proof on the issue of Mary Kay's undue influence, fraud, and duress, as well as the other factors set forth in La. R.S. 9:3854(C).[2] Ginny buttresses this with the contention that the trial court peremptorily granted the motion to dismiss before undertaking the statutory requirements of La. R.S. 9:3854(B) (providing that while the action to review is pending, the court may (1) order an accounting from the mandatary; (2) order, without first holding a contradictory hearing, a financial institution, a healthcare provider, or any other person to provide the financial, medical, or other information of any defendant to the action; (3) appoint a qualified person to investigate the allegations of the petition and to report the findings; (4) on its own motion, order other appropriate discovery; (5) enjoin the mandatary from exercising all or some of the powers granted by the mandate during the pendency

---

[2] La. R.S. 9:3854(C) provides:

> In reaching its decision, the court shall consider the mandate and may consider any other relevant factors, including any of the following:
> (1) The expressed wishes of the principal.
> (2) The known or reasonable expectations of the principal.
> (3) The best interests of the principal.
> (4) Any will, trust, or beneficiary designation executed by the principal.
> (5) The principal's history or pattern of donations inter vivos.
> (6) Physical, financial, or psychological abuse of the principal.
> (7) Fraud, duress, or undue influence.
> (8) The principal's regular contact with family and friends other than the mandatary.
> (9) The ability of the principal to comprehend generally the nature and consequences of the acts of the mandatary.
> (10) The donee's knowledge or imputed knowledge that a donation was not for the benefit or gratification of the principal.
> (11) The good or bad faith of a defendant.

10

of the action; or (6) appoint a person to exercise some or all of the authority granted by the mandate, including authority to perform routine financial transactions and to make healthcare decisions, if there is no successor or substitute mandatary named in the mandate who is able or willing to serve, or if no law otherwise provides a person to act).

Pursuant to La. Const. Art. I, § 22, "[a]ll courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay." This grant of constitutional authority is tempered by the court's "power to require that the proceedings ... be conducted ... in an orderly and expeditious manner ... and to control the proceedings at the trial, so that justice is done." La. C.C.P. art. 1631. The trial judge has great discretion in the manner in which proceedings are conducted, and it is only upon a showing of a gross abuse of discretion that appellate courts have intervened. *Thomas v. Dep't of Wildlife & Fisheries*, 2018-0869 (La. App. 1st Cir. 10/2/19), 289 So.3d 579, 598, writ denied, 2019-01767 (La. 1/14/20), 291 So.3d 687. The due process clauses of the Louisiana Constitution and the Fourteenth Amendment of the United States Constitution guarantee litigants a right to a fair hearing. Nonetheless, "due process" does not mean litigants are entitled to an unlimited amount of the court's time. *Currier v. Anding*, 2017-0438 (La. App. 1st Cir. 11/1/17), 235 So.3d 1204, 1213, writ denied, 2018-0038 (La. 3/2/18), 269 So.3d 714.

We can find nothing in the Chapter entitled "Action to Review the Acts of a Mandatary" that requires the trial court to address a plaintiff's claims for relief under La. R.S. 9:3851 and 3854 prior to taking up the principal's motion to dismiss. Indeed, La. R.S. 9:3854(B) states only that the court *may* implement the safeguards permitted thereunder. In the interpretation of statutes, the word may is

11

permissive in contradistinction to the word shall, which is mandatory. See La. R.S. 1:3, La. C.C.P. art. 5053. Thus, we disagree with Ginny that the trial court was required to evaluate her claims for relief before considering Mrs. Gerace's motion to dismiss. We find no abuse of discretion in the trial court's manner of applying the provisions of La. R.S. 9:3851-3854.

The trial court's discretion in the manner in which it conducts its proceedings includes its rulings on the admissibility of a witness's testimony. Generally, the trial court is granted broad discretion on evidentiary rulings, and its determinations will not be disturbed on appeal absent a clear abuse of that discretion. *In re Succession of Cannata*, 2014-1546 (La. App. 1st Cir. 7/10/15), 180 So.3d 355, 375, writ denied, 2015-1686 (La. 10/30/15), 180 So.3d 303. When the court rules against the admissibility of any evidence, it shall either permit the party offering such evidence to make a complete record thereof, or permit the party to make a statement setting forth the nature of the evidence. See La. C.C.P. art. 1636(A).

At the conclusion of Mrs. Gerace's testimony, Ginny sought to introduce the testimony of rebuttal witnesses. The trial court disallowed the evidence, and Ginny made a proffer on the record, summarizing the testimony as follows:

> We summoned rebuttal ... witnesses that is [Paul] and [Ginny] and [Mary Turner]. Their statements would contradict all of the testimony that [the court has] heard in evidence this afternoon regarding ... [NFCU], the bank statements, the records, ... record access, mail access, and so on and so forth. So with that, we'll make the proof of those three witnesses and their testimony....
>
> [L]et me make one more part of my proffer. ... [Ginny] ... [and Mary Turner] ... their proffer testimony would be that there has been no regular contact with [Mrs. Gerace], as the case may be for purposes of estrangement and alienation of affections.

Nothing in the proffer purported to provide additional facts as to Mrs. Gerace's understanding of the nature and consequences of Mary Kay's acts using

12

the power of attorney or of Mary Kay's authority to act on Mrs. Gerace's behalf having been obtained as a result of fraud, duress, or undue influence. More importantly, on appeal, even if we were to accept the testimony of Ginny and her family witnesses, the trial court's factual conclusions are not manifestly erroneous because when a fact finder is presented with two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Where there is conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact are not to be disturbed upon review. See *Stobart*, 617 So.2d at 882-83. During both her direct and cross examinations, Mrs. Gerace was asked questions presenting Ginny's version of the facts. Mrs. Gerace offered a different version of the facts, expressly rejecting those set forth in Ginny's petition. The choice to believe Mrs. Gerace was within the trial court's province as trier of fact and, as such, the trial court was not manifestly erroneous or clearly wrong in crediting her testimony.[3]

Therefore, we find no abuse of discretion by the trial court's exclusion of Ginny's witnesses or the manner with which it conducted the hearing under La. R.S. 9:3851-3856. Given the gatekeeper function set forth by the provisions of La. R.S. 9:3852, the manner in which trial court undertook to hear the motion to dismiss eliminated protracted and costly litigation where the elderly principal, having subjected herself to invasive and embarrassing court scrutiny, demonstrated her general comprehension of the nature and consequences of the acts of her mandatary and ensured the court that her mandatary's authority was not the result

---

[3] Ginny does not suggest and nothing in the record shows that the trial court limited the content or form of her proffer in any manner. Thus, this case is distinguishable from those where the trial court limited the proffer to a "statement setting forth the nature of the evidence," rather than allowing the party to make a record of the excluded evidence. See La. C.C.P. art. 1636. In such instances, upon finding the excluded evidence admissible, the appellate court may remand to permit the introduction of the excluded evidence. *Foley v. Entergy Louisiana, Inc.*, 2006-0983 (La. 11/29/06), 946 So.2d 144, 164 n.13.

of fraud, duress, or undue influence.[4] Accordingly, the trial court correctly granted Mrs. Gerace's motion to dismiss the action to review.

**Attorney Fees:**

Without expressing an amount, the trial court "GRANTED" Mrs. Gerace's motion for attorney fees.[5] On appeal, Ginny maintains that because her action to review was not frivolous, the trial court erred in granting Mrs. Gerace's request for attorney fees.

La. R.S. 9:3855 addresses costs and attorney fees, providing in part: "The court may render judgment for costs and attorney fees, or any part thereof, against any party." A clear reading of La. R.S. 9:3855 reveals the determination of whether to award attorney fees lies within the discretion of the trial court. The trial court had the option to award Mrs. Gerace attorney fees, but it was not mandated. See *Interdiction of Hoge*, 52,368 (La. App. 2d Cir. 9/26/18), 256 So.3d 458, 461 (interpreting La. C.C.P. art. 4550, applicable to interdiction proceedings, which provides "The court may render judgment for costs and attorney fees, or any part thereof, against any party, as the court may consider fair."). See also *In re Interdiction of Mashburn*, 2012-1444 (La. App. 1st Cir. 4/30/13), 2013 WL 1845714, at *2 (unpublished) (noting that under Article 4550, the trial court is vested with considerable discretion in making an award of attorney fees, and the award will not be disturbed in the absence of a clear abuse of that discretion).

---

[4] Ginny asserts the trial court erred by granting an order staying discovery pending the hearing on the motion to dismiss. At the commencement of the hearing, the trial court stated it was inclined to vacate the stay order unless the parties presented another viable approach. Subsequent to discussions outside the court's presence, Ginny's counsel stated, "The parties did converse ... and we agreed that the only matter today ... will be the motion to dismiss." Accordingly, Ginny waived any objection when she agreed to move forward with Mrs. Gerace's motion to dismiss.

[5] See La. C.C.P. art. 2088(A)(10) ("The jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches, on the granting of the order of appeal .... Thereafter, the trial court has jurisdiction in the case only over those matters not reviewable under the appeal, including the right to ... [s]et and tax costs, expert witness fees, and attorney fees."). See also Comments 2021 of La. C.C.P. art. 2088, comment (a) ("[I]t is no longer necessary for an appellate court to dismiss an appeal in order to allow the trial court to set the amount of the attorney fees, because the trial court has jurisdiction to set attorney fees while the appeal is pending.").

We find nothing in La. R.S. 9:3855 that requires a showing of frivolity as necessary for the trial court to grant a request for attorney fees. Although we recognize that comment (a) of the 2014 Comments to La. R.S. 9:3855 states, "[A]ttorney fees are allowed to discourage frivolous suits or to reimburse the petitioner who initiates an action [for review] to benefit the principal," we decline to graft onto the statute a showing of frivolity where the legislature has not required. See *Interdiction of Hoge*, 256 So.3d at 462 (in awarding attorney fees under La. C.C.P. art. 4550, had the legislature wanted the good faith of the parties to determine reimbursement, it would have included that requirement in the language of the article). See also and compare *In re Interdiction of Mashburn*, 2013 WL 1845714, at *2 (the court concluded that good or bad faith of litigant was but one factor in the trial court's fashioning of a reasonable attorney fee under Article 4550 and not a necessary requirement).

The trial court did not abuse its much discretion in granting Mrs. Gerace's request for attorney fees where it determined that Ginny was not entitled to relief under La. R.S. 9:3851-3856. Having concluded that Mrs. Gerace was able to manage her affairs, understood the function of a power of attorney, decidedly wanted Mary Kay to be her mandatary, and that Mrs. Gerace's execution of the power of attorney was not the result of fraud, duress, or undue influence, the trial court clearly had discretion to allow an award of attorney fees to the principal, subjected to an invasive and embarrassing court scrutiny.

## DECREE

For these reasons, the trial court's judgment, dismissing the action against defendant-appellee, Norma F. Gerace, and granting her motion for attorney fees, is affirmed. Appeal costs are assessed against plaintiff-appellant, Virginia "Ginny" Anne Gerace Benoist.

**AFFIRMED.**